# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF NEW YORK

DWIGHT R. DeLEE,

                                        Plaintiff,

            v.                                          5:20-CV-549
                                                        (GTS/ATB)

STATE OF NEW YORK, et al.,

                                        Defendants.

DWIGHT R. DeLEE, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## ORDER and REPORT-RECOMMENDATION

The Clerk has sent to the court for review a complaint brought pursuant to 42
U.S.C. § 1983, filed by plaintiff Dwight R. DeLee. (Complaint ("Compl.") (Dkt. No. 1).
Plaintiff has also filed an application to proceed in forma pauperis ("IFP"). (Dkt. No. 2).

## I.  IFP Application

Plaintiff declares in his IFP application that he is unable to pay the filing fee.
(Dkt. No. 2).  After reviewing his application, this court finds that plaintiff is financially
eligible for IFP status.

However, in addition to determining whether plaintiff meets the financial criteria
to proceed IFP, the court must also consider the sufficiency of the allegations set forth in
the complaint in light of 28 U.S.C. § 1915, which provides that the court shall dismiss
the case at any time if the court determines that the action is (i) frivolous or malicious;
(ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief
against a defendant who is immune from such relief. 28 U.S.C. § 1915 (e)(2)(B)(i) -(iii).

In determining whether an action is frivolous, the court must consider whether the

complaint lacks an arguable basis in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 325 (1989).  Dismissal of frivolous actions is appropriate to prevent abuses of court process as well as to discourage the waste of judicial resources. *Neitzke*, 490 U.S. at 327; *Harkins v. Eldridge*, 505 F.2d 802, 804 (8th Cir. 1974).  Although the court has a duty to show liberality toward *pro se* litigants, and must use extreme caution in ordering *sua sponte* dismissal of a *pro se* complaint before the adverse party has been served and has had an opportunity to respond, the court still has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed. *Fitzgerald v. First East Seventh St. Tenants Corp*., 221 F.3d 362, 363 (2d Cir. 2000) (finding that a district court may dismiss a frivolous complaint *sua sponte* even when plaintiff has paid the filing fee).

To survive dismissal for failure to state a claim, the complaint must contain sufficient factual matter, accepted as true, to state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Bell Atl. Corp*., 550 U.S. at 555).

## II.   **Complaint**

Plaintiff states that on November 16, 2009, he was charged with Murder, Second Degree and Criminal Possession of a Weapon, Third Degree. (Complaint ("Compl.")   ¶ 5).[1]  Plaintiff was subsequently indicted for Murder, Second Degree as a Hate Crime.

---

[1] Plaintiff has numbered the paragraphs of his complaint sequentially.  Thus, unless otherwise noted, I will cite to the paragraphs of the complaint as plaintiff has numbered them.

(*Id.*)  The charges were filed as the result of a 2008 incident in which a transgender woman was shot and killed because she was transgender. (Compl. ¶ 11).  After a jury trial in 2009, the plaintiff was convicted of Manslaughter, First Degree as a Hate Crime and Criminal Possession of a Weapon, Third Degree. (Compl. ¶¶ 6, 15).  The jury acquitted plaintiff of Manslaughter, First Degree. (*Id.*)

On July 26, 2013, the Appellate Division, Fourth Department reversed the conviction for Manslaughter, First Degree as a Hate Crime, for being "repugnant" to an acquittal on Manslaughter, First Degree, but affirmed the weapons conviction. (Compl. ¶ 19). *See People v. DeLee*, 108 A.D.3d 1145 (4th Dep't 2013).  The prosecutor appealed the Appellate Division's determination, and plaintiff states that on November 15, 2015,[2] the New York Court of Appeals granted the prosecutor's request to resubmit the Manslaughter, First Degree as a Hate Crime to a new grand jury. (Compl. ¶ 21). *See People v. DeLee*, 24 N.Y.3d 603 (2014).

On June 7, 2016, plaintiff was re-indicted on Manslaughter, First Degree as a Hate Crime. (Compl. ¶ 22).  Plaintiff states that his attorney filed a motion in the trial court, alleging that such retrial would violate plaintiff's right to be free from Double Jeopardy. (Compl. ¶ 24).  However, on December 12, 2016, the Honorable John J. Brunetti denied the plaintiff's motion.[3] (Compl. ¶ 25).  Plaintiff's attorney filed an

---

[2]Although plaintiff's complaint states that the Court of Appeal's decision was in November of 2015, this is a typographical error.  The case was actually decided in 2014, as actual case citation indicates.  The New York Court of Appeals stated that "accordingly, the order of the Appellate Division should be modified by granting the People, if they be so advised, leave to resubmit the charge of manslaughter in the first degree as a hate crime to another grand jury, and, as so modified, affirmed." 24 N.Y.3d at 611.

[3] Although not mentioned in his complaint, the court notes that on July 1, 2016, the plaintiff filed a petition for habeas corpus in this court, seeking to prevent his retrial on double jeopardy

Article 78 proceeding requesting a stay. (Compl. ¶ 26).  However, on February 2, 2018, the Appellate Division, Fourth Department denied plaintiff's Article 78 petition, finding that the Appellate Division was bound by the New York Court of Appeals ruling which allowed the prosecutor to present the Manslaughter, First Degree as a Hate Crime to a new grand jury. (Compl. ¶ 27). *See DeLee v. Brunetti*, 158 A.D.3d 1171 (4th Dep't 2018).  The New York Court of Appeals denied plaintiff's request for leave to appeal the Appellate Division's order. (Compl. ¶ 28). *See DeLee v. Brunetti*, 3 N.Y.3d 911 (2018).

On March 11, 2019, plaintiff, representing himself, went to trial before a jury on the Manslaughter, First Degree as a Hate Crime. (Compl. ¶¶ 29-30).  Plaintiff's first cause of action in this civil rights action is that, by trying plaintiff a second time for the Manslaughter, First Degree as a Hate crime, the "State of New York" violated his right to be free of Double Jeopardy and subjected him to unlawful imprisonment. (Compl. ¶¶ 33-39).  Plaintiff seeks three million dollars for this violation. (Compl. ¶¶ 39).

Plaintiff's second cause of action is for wrongful/unlawful conviction. (Compl. ¶¶ 41-54).  Plaintiff alleges that defendant Syracuse Police Department failed to conduct a thorough investigation into the "true facts" of this incident. (Compl. ¶¶ 43-54).  Plaintiff alleges that if the Syracuse Police Department had conducted a proper investigation,

---

grounds. *DeLee v. Conway*, No. 9:16-CV-799 (BKS).  On July 12, 2016, the Honorable Brenda K. Sannes, Unites States District Court Judge dismissed the petition for habeas corpus without prejudice for failure to exhaust state court remedies. *DeLee v. Conway*, No. 9:16-CV-799 (BKS), 2016 WL 3823808 (N.D.N.Y. July 12, 2016).  Plaintiff subsequently exhausted his state court remedies as shown herein by filing a motion before Judge Brunetti and then appealing the denial to the Appellate Division and to the New York Court of Appeals.  He never returned to the federal court, but stood trial a second time and was found not guilty of the hate crime.

"the proper suspect would have been lawfully detained." (Compl. ¶ 53).  Plaintiff seeks

five million dollars from the Syracuse Police Department. (Compl. ¶ 54).

Plaintiff's third cause of action is for "Discrimination, Slander, and Defamation

of character," and it appears to be directed at the Post Standard/Syracuse.Com.  Plaintiff

alleges that in "2009," he and his family were subjected to hardship, and plaintiff was

called a "transgender killer," based on "the way the Post Standard/ Syracuse.com

published their articles." (Compl. ¶¶ 55-68).  Plaintiff also claims that after the father of

one of the witnesses was shot, the news media falsely stated that plaintiff was

"retaliating." (Compl. ¶ 57).  The media also published allegedly false information,

implying that plaintiff was "threatening witnesses." (Compl. ¶¶ 58-60).  The remainder

of this cause of action is unclear.

Plaintiff alleges that even after the reversal of the conviction by the Appellate

Division, and his release on parole in 2013, he was subject to "discrimination," perhaps

based on articles written by the Post Standard/Syracuse.com.  Plaintiff alleges that he

was fired from two jobs because of these charges and had trouble in a civil court

proceeding with "Grant Village." (Compl. ¶¶ 63-67).  Plaintiff states that it was "so

clear that the [plaintiff] was being penalized and harassed for a crime that was dismissed

on his appeal, which hindered him from living a productive life in society, and caused

pain and suffering." (Compl. ¶ 67).  Plaintiff asks for 1.5 million dollars for

"Discrimination" and 1.5 million dollars for Slander and Defamation of Character.

(Compl. ¶ 68).

Finally, plaintiff claims that "Gilbert's" committed libel by falsely citing

plaintiff's case in its "law book." (Compl. ¶ 72-76).  Plaintiff alleges that the Gilberts

"2016-2020" states that "'***Conviction of first degree Murder as a Hate Crime***
(emphasis added) and an ***acquittal of Manslaughter as a Hate Crime*** (emphasis added)
were inconsistent and repugnant as all elements of Manslaughter as a Hate Crime are
included in the crime of first degree Murder as a Hate Crime; people given leave to
resubmit Manslaughter as a Hate Crime to another grand jury.'" (Compl. ¶ 72).  Plaintiff
states that the facts in the book are clearly misstated, and he was never charged,
indicted, or convicted of first degree Murder as a Hate Crime, nor was he acquitted of
Manslaughter as a Hate Crime during the first proceeding. (Compl. ¶ 73).  Plaintiff
claims that he alerted Judge Brunetti to this error, but he told plaintiff that the court did
not have any control over the publication. (Compl. ¶ 75).  Plaintiff states that he also
wrote to the publisher of Gilbert's, but that he got no response. (*Id.*)  Plaintiff states that
he is left with an injured reputation. (*Id.*)  Thus, plaintiff claims that the error constitutes
libel by the publisher of Gilbert's.  Plaintiff also seeks two million dollars in punitive
damages. (Compl. ¶¶ 77-79).

III.   **Eleventh Amendment Immunity**

A.   **Legal Standards**

The Eleventh Amendment provides that states have immunity against suits in
federal court. *Kentucky v. Graham*, 473 U.S. 159 (1985) (no claims for damages against
the state in federal court); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106
(1984).  A claim against a state agency is also considered a claim against the state and
implicates the Eleventh Amendment because the state is the "real" party in interest. *Id.*
at 101.  The Eleventh Amendment also bars suits against state agencies and state
officers in their official capacities. *See Huang v. Johnson*, 251 F.3d 65, 70 (2d Cir.

6

2001). When the state or one of its "arms" is the defendant, sovereign immunity bars federal courts from entertaining law suits against them "regardless of the nature of the relief sought." *Penhurst*, 465 U.S. at 100. The Eleventh Amendment is not abrogated by section 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989).

### B.   Application

In this case, plaintiff has named the State of New York as a defendant and requests substantial monetary relief. Such a claim under section 1983 is clearly prohibited by the Eleventh Amendment. Thus, the State of New York must be dismissed as a defendant, regardless of plaintiff's ultimate acquittal or the merits of his claim.[4] *See Restivo v. Hessman*, 846 F.3d 547, 583 (2d Cir. 2017) ("it is axiomatic that a state is not a proper defendant in an action brought pursuant to Section 1983") (citing *Will v. Mich. Dep't of the State Police*, 491 U.S. 58, 71 (1981)).

## IV.   <u>Syracuse Police Department</u>

### A.   Legal Standards

"'[D]epartments that are merely administrative arms of a municipality do not have a legal identity separate and apart from the municipality and, therefore, cannot be sued.'" *Burris v. Nassau County District Attorney*, No. 14-CV-5540, 2017 WL

---

[4] The court notes that there is a mechanism in the New York State Court of Claims to sue New York State for wrongful conviction. *See* N.Y. Ct. Cl. Act, 8-b. *See e.g. Gristwood v. State*, 119 A.D.3d 1414 (4th Dep't 2014) (granting damages for wrongful conviction in the New York Court of Claims). The court also notes that *federal* courts do not review verdicts for "repugnancy," and that double jeopardy does not prohibit retrial of a defendant whose first conviction was overturned. *See North Carolina v. Pierce*, 395 U.S. 711, 720 (1969) (retrial not precluded by double jeopardy); *People v. Muhammed*, 17 N.Y.3d 532, 538 (2011) (citing *United States v. Powell*, 469 U.S. 57, 63 (1984); *Harris v. Rivera*, 454 U.S. 339, 346 (1991)). Thus, it is unlikely that plaintiff's double jeopardy claim would succeed as a federal "constitutional" claim in any event.

9485714, at *4 (E.D.N.Y. Jan. 12, 2017) (quoting *Harris v. Nassau County*, No. 13-CV-4728, 2016 WL 3023265, at *12 (E.D.N.Y. May 24, 2016) (dismissing claims against the Nassau County Police Department because it is an administrative arm of the municipality of Nassau County)) (also citing *Pooler v. Hempstead Police Dep't*, 897 F. Supp. 2d 12, 21 (E.D.N.Y. 2012) (dismissing claims against Hempstead Police Department and holding that the Hempstead Police Department is an "administrative arm" of the Village of Hempstead); *Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing claims against Lynbrook Police Department); *Wilson v. City of New York*, 800 F. Supp. 1098, 1101 (E.D.N.Y. 1992) ("The court also dismisses the claims against the New York City Police Department which cannot be sued independently because it is an agency of the City of New York").

## B.   Application

In this case, plaintiff names the Syracuse Police Department "[a]s a whole body." (Compl. ¶ 3(B)). Plaintiff may not sue the police department, and thus, any claims against the "department" must be dismissed. To the extent that the complaint may be interpreted as a claim against the City of Syracuse, plaintiff has failed to state a claim.[5]

A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality,

---

[5] A pro se plaintiff's pleadings are interpreted to raise the strongest arguments that they suggest. *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994).

through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.

To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id*.; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.

Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Id.* However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training' " is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in Monell ")). To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citation omitted).

In this case, plaintiff essentially claims that the police should have done a better investigation, and if so, the "department" would have discovered various lies told by various individuals who wished to "protect" the true perpetrator of the crime. There is no basis for municipal liability alleged in the complaint. Plaintiff does not state what would have amounted to a "more thorough" investigation. Plaintiff essentially claims

9

that several individuals lied to the police when they were interviewed regarding the crime. He also makes a statement regarding DNA and the murder weapon.[6] None of plaintiff's allegations reflect a failure to train or "deliberate indifference" to the rights of persons who would come into contact with the officers. Thus, plaintiff does not state a claim for municipal liability, and to the extent that the complaint may be read to allege a claim against the City of Syracuse, it may be dismissed at this time.

## V.    **State Action**

### A.    **Legal Standards**

In order to bring a civil rights action under 42 U.S.C. § 1983, the plaintiff must establish that a defendant, who acts under color of state law, has caused the deprivation of a right protected by the federal constitution or laws. 42 U.S.C. § 1983. A person acts under color of state law when he or she acts in his or her official capacity, "clothed with the authority of state law," or acts under "pretense" of law by purporting to act with official power. *Pleasure Island, Inc. v. City of New York*, No. 12 Civ. 4699, 2013 WL 2311837, at *5-6 (E.D.N.Y. May 24, 2013) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988)).

The requirement that the defendant acted under "color of state law" is jurisdictional. *Lucas v. Riggi*, No. 07-CV-6200, 2008 WL 4758706, at *2 (W.D.N.Y. Oct. 29, 2008) (citing *Polk County v. Dodson*, 454 U.S. 312, 315 (1981)). Private conduct is simply beyond the reach of section 1983 "'no matter how discriminatory or

---

[6] The court must point out that the weapons possession charge was not overturned by any court, and plaintiff still stands convicted of possession of weapon. Plaintiff also alleges that the DNA testing on the weapon "excluded" him as a "donor." Thus, plaintiff's references to DNA testing are unclear as to how they relate to the allegedly improper investigation.

wrongful" that conduct may be." *Id.* (quoting *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)).  A private party may act under color of state law if he or she engages in conduct that constitutes willful participation in joint activity with the state. *Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (per curiam).  The nexus to the state must be so close as to be fairly treated as that of the state itself. *Tancredi v. Metro Life Ins. Co.,* 316 F.3d 308, 312 (2d Cir. 2003) (citations omitted).

    **B.**    **Application**

    Plaintiff has sued the Post Standard/Syracuse.com as well as the "Publishers of NY CLS Desk Edition Gilbert's." (Compl. ¶¶ 3(C) and (D)).  In the body of the complaint, plaintiff refers to Gilbert's Law Book. (Compl. ¶ 72).  "Gilbert's" is published by Matthew Bender & Co., Inc., which operates as a division of LexisNexis Group, specializing in the publication of analytic research information. https://www. bloomberg.com/profile/company/0948426D:US.  Plaintiff claims that the Post Standard/Syracuse.com misrepresented the facts regarding plaintiff's criminal trial and that Gilbert's erred in reporting the crime for which the plaintiff was charged.  Both companies are private and not related to the State of New York.  Regardless of plaintiff's claims, neither defendant acts under color of state law for purposes of jurisdiction under section 1983.  Plaintiff has not shown that either defendant committed any act that would be considered as taken under the authority of state law, nor that either private company participated in joint activity with the state such that the action would be considered as taken by the state itself.  Thus, plaintiff's complaint may be dismissed as against the Post Standard/Syracuse.com and Gilbert's or "Matthew Bender & Co.,

Inc. for lack of subject matter jurisdiction. *See e.g., Yuan v. Tops Mkt*., LLC, No. 5:10-CV-1251 (NAM/ATB), 2016 WL 164314, at *1 (N.D.N.Y. Jan. 12, 2016) (dismissing § 1983 claim against private party for lack of subject matter jurisdiction) (citing *Sybalski v. Indep. Grp. Home Living Program, Inc*., 546 F.3d 255, 257 (2d Cir. 2008)).

## VI.   Opportunity to Amend

### A.   Legal Standards

Generally, when the court dismisses a pro se complaint *sua sponte*, the court should afford the plaintiff the opportunity to amend at least once, however, leave to re-plead may be denied where any amendment would be futile. *Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011); *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993).  Futility is present when the problem with plaintiff's causes of action is substantive such that better pleading will not cure it. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (citation omitted).

### B.   Application

#### 1.   New York State

Plaintiff may not sue the State of New York for damages in federal court, and no amendment will cure this deficiency.  Thus, the court will recommend dismissing the case against the State without prejudice,[7] but without leave to amend.

#### 2.   Syracuse Police Department

---

[7] If plaintiff wishes to sue for damages against New York State resulting from an unlawful conviction, he may do so in the New York Court of Claims.  This court expresses no opinion of the merits of such a claim.

Plaintiff also may not sue the "Police Department," and therefore, the court will recommend dismissing plaintiff's action as against the police department, without leave to amend against the "Department."  To the extent that the complaint may be interpreted as a claim against the City of Syracuse, plaintiff has failed to state a claim for municipal liability.  It is also unclear what plaintiff's claim on the merits might be because he cannot allege that the City was responsible for his retrial.  The New York Court of Appeals allowed the prosecutor to re-present the Manslaughter, First Degree as a Hate Crime to a new grand jury.  The choice to retry the plaintiff belonged to the prosecutor. Other than stating that witnesses lied to the police, plaintiff has failed to indicate what constitutional violation he suffered at the hands of any individual police officer or as the result of any failure to train by the City of Syracuse.  Although this court has serious doubts about whether plaintiff can state a claim for "due process" or "denial of fair trial,"[8] this court will recommend dismissing the plaintiff's claim without prejudice and affording him leave to amend.

### 3.   Media/Publisher Defendants

Plaintiff's claims against the Post/Standard/Syracuse.com and Gilbert's must also

---

[8] As it is written, the cause of action begins with a conclusory statement that plaintiff was punished for a crime that he did not commit, because of "eyewitness misidentification, false confessions, police and prosecutorial misconduct, and system of racism and implicit bias." (Compl. ¶ 41).  The rest of this section of the complaint speaks to false statements and allegedly deficient investigation, but discusses none of the other conclusory statements that plaintiff has made in the first paragraph. (Compl. ¶¶ 43-54).  Instead, plaintiff essentially repeats why he believes that the police failed to do a "thorough" investigation, explaining his view of the facts.  "[C]omplaints relying on the civil rights statutes are insufficient unless they contain some specific allegations of fact indicating a deprivation of rights, instead of a litany of general conclusions that shock but have no meaning." *Barr v. Abrams*, 810 F.2d 358, 363 (2d Cir. 1987) (citing *Ostrer v. Aronwald*, 567 F.2d 551, 553 (2d Cir. 1977); *Koch v. Yunich*, 533 F.2d 80, 85 (2d Cir. 1976); *Powell v. Jarvis*, 460 F.2d 551, 553 (2d Cir.1972)).  Plaintiff has failed to state a constitutional claim.

be dismissed for lack of subject matter jurisdiction, and the dismissal should be without opportunity to amend, but without prejudice to plaintiff filing any appropriate state court actions for defamation, libel, or slander.[9]

**WHEREFORE**, based on the findings above, it is

**ORDERED**, that plaintiff's application to proceed IFP (Dkt. No. 2) be **GRANTED** for purposes of filing and initial review, and it is

**RECOMMENDED**, that the complaint be **DISMISSED WITHOUT PREJUDICE**, **BUT WITHOUT LEAVE TO AMEND as to DEFENDANTS STATE OF NEW YORK, "SYRACUSE POLICE DEPARTMENT," POST STANDARD/SYRACUSE.COM, and GILBERT'S**, and it is

**RECOMMENDED**, that if the District Court adopts this Order and Report-Recommendation, to the extent that the complaint may be interpreted as naming the **CITY OF SYRACUSE** as a defendant, the complaint be **DISMISSED WITHOUT PREJUDICE, BUT WITH THE OPPORTUNITY TO AMEND**,[10] and it is

---

[9] This court makes absolutely no finding as to the merit of any state law claim.

[10] Any such amendment should be in the form of a "proposed amended complaint" which shall be subject to initial review by the court before filing as an amended complaint.  The court may give plaintiff a specified amount of time within which to file his proposed amendment or within which to request an extension of time to do so.  Furthermore, in any proposed amended complaint, plaintiff must clearly set forth facts that give rise to the claims, including the dates, times, and places of the alleged underlying acts, and each individual who committed each alleged wrongful act. In addition, if there are individual defendants named, the revised pleading should allege facts demonstrating the specific involvement of any of the named defendants in the constitutional deprivations alleged in sufficient detail to establish that they were tangibly connected to those deprivations. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).  Finally, any amended complaint will replace the existing complaint in its entirety.  The proposed amended complaint must be a complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the court. *See Shields v. Citytrust Bancorp, Inc*., 25 F.3d 1124, 1128 (2d Cir. 1994) ("It is well established that an amended complaint ordinarily supersedes the original and renders it of no legal effect.").

**RECOMMENDED**, that if the court adopts this Order and Report Recommendation, and plaintiff does submit a "proposed amended complaint, such complaint be returned to me for further review, and it is

**ORDERED**, that the Clerk serve a copy of this Order and Report-Recommendation on plaintiff by regular mail.

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: June 12, 2020

Andrew T. Baxter
U.S. Magistrate Judge