UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

DWIGHT R. DeLEE,

                         Plaintiff,

   v.                                          5:20-CV-549
                                                          (GTS/ATB)

CITY OF SYRACUSE,

                         Defendant.

---

DWIGHT R. DeLEE, Plaintiff, pro se

ANDREW T. BAXTER
United States Magistrate Judge

## REPORT-RECOMMENDATION

The Clerk has sent to the court for review an amended complaint brought pursuant to 42 U.S.C. § 1983, filed by plaintiff Dwight R. DeLee in accordance with an order of this court. (Amended Complaint ("AC") (Dkt. No. 10).

Plaintiff filed his original complaint on May 15, 2020. (Dkt. No. 1). In that complaint he sued a number of defendants in conjunction with his 2009 conviction, reversal, and subsequent acquittal after a retrial on Manslaughter as a Hate Crime. (*Id.*) I reviewed plaintiff's complaint and issued an Order and Report-Recommendation ("ORR"), recommending dismissal without leave to amend on all but one of plaintiff's claims. (Dkt. No. 4). My ORR was adopted by Chief Judge Glenn T. Suddaby on July 27, 2020.[1] (Dkt. No. 7). Plaintiff filed his amended complaint on August 28, 2020. (Dkt. No. 10). For the following reasons, this court finds that plaintiff has failed to cure the defects in his original complaint, and the amended complaint must be dismissed.

---

[1] Rather than having plaintiff file a "proposed amended complaint," Chief Judge Suddaby directed that plaintiff file a "signed Amended Complaint," which would be referred to me for review.

## DISCUSSION

**I.   Facts**

The court will briefly review the facts as stated by the plaintiff for clarity. Plaintiff states that on November 16, 2009, he was charged with Murder, Second Degree and Criminal Possession of a Weapon, Third Degree. (AC ¶ 5).[2] Plaintiff was subsequently indicted for Murder, Second Degree as a Hate Crime. (*Id.*) The charges were filed as the result of a 2008 incident in which a transgender woman was shot and killed because she was transgender. (AC ¶ 11). After a jury trial in 2009, the plaintiff was convicted of Manslaughter, First Degree as a Hate Crime and Criminal Possession of a Weapon, Third Degree. (AC ¶¶ 6, 15). The jury acquitted plaintiff of Manslaughter, First Degree. (*Id.*)

On July 26, 2013, the Appellate Division, Fourth Department reversed the conviction for Manslaughter, First Degree as a Hate Crime, for being "repugnant" to an acquittal on Manslaughter, First Degree, but affirmed the weapons conviction. (AC ¶ 19). *See People v. DeLee*, 108 A.D.3d 1145 (4th Dep't 2013). The prosecutor appealed the Appellate Division's determination, and plaintiff states that on November 15, 2015,[3]

---

[2] Plaintiff numbered the paragraphs of his complaint and his amended complaint sequentially. Thus, unless otherwise noted, I will cite to the paragraphs of the complaint or the amended complaint as plaintiff has numbered them. The beginning paragraphs of the amended complaint are identical to the original.

[3] Although plaintiff's complaint and amended complaint state that the Court of Appeal's decision was in November of 2015, this is a typographical error. Plaintiff has made the same typographical error in the amended complaint. As I stated in my ORR, the case was actually decided in 2014, as actual case citation indicates. (Dkt. No. 4 at 3 n.2). The New York Court of Appeals stated that "accordingly, the order of the Appellate Division should be modified by granting the People, if they be so advised, leave to resubmit the charge of manslaughter in the first degree as a hate crime to another grand jury, and, as so modified, affirmed." 24 N.Y.3d at 611.

the New York Court of Appeals granted the prosecutor's request to resubmit the Manslaughter, First Degree as a Hate Crime to a new grand jury. (AC ¶ 21). *See People v. DeLee*, 24 N.Y.3d 603 (2014).

On June 7, 2016, plaintiff was re-indicted on Manslaughter, First Degree as a Hate Crime. (AC ¶ 22). Plaintiff states that his attorney filed a motion in the trial court, alleging that such retrial would violate plaintiff's right to be free from Double Jeopardy. (AC ¶¶ 23-24). However, on December 12, 2016, the Honorable John J. Brunetti denied the plaintiff's motion.[4] (AC ¶ 25). Plaintiff's attorney filed an Article 78 proceeding requesting a stay. (AC ¶ 26). However, on February 2, 2018, the Appellate Division, Fourth Department denied plaintiff's Article 78 petition, finding that the Appellate Division was bound by the New York Court of Appeals ruling which allowed the prosecutor to present the Manslaughter, First Degree as a Hate Crime to a new grand jury. (AC ¶ 27). *See DeLee v. Brunetti*, 158 A.D.3d 1171 (4th Dep't 2018). The New York Court of Appeals denied plaintiff's request for leave to appeal the Appellate Division's order. (AC ¶ 28). *See DeLee v. Brunetti*, 3 N.Y.3d 911 (2018).

On March 11, 2019, plaintiff, representing himself, went to trial before a jury on the Manslaughter, First Degree as a Hate Crime. (AC ¶¶ 29-30). Plaintiff was acquitted of the charge. (AC ¶ 31). As relevant to this amended complaint, plaintiff's original

---

[4] In my ORR, I also noted that on July 1, 2016, the plaintiff filed a petition for habeas corpus in this court, seeking to prevent his retrial on double jeopardy grounds. (Dkt. No. 4 at 3-4, n.3) (citing *DeLee v. Conway*, No. 9:16-CV-799 (BKS)). On July 12, 2016, the Honorable Brenda K. Sannes, Unites States District Court Judge dismissed the petition for habeas corpus without prejudice for failure to exhaust state court remedies. (*Id.*) (citing *DeLee v. Conway*, No. 9:16-CV-799 (BKS), 2016 WL 3823808 (N.D.N.Y. July 12, 2016)). Plaintiff subsequently exhausted his state court remedies by filing a motion before Judge Brunetti and then appealing the denial to the Appellate Division and to the New York Court of Appeals. He never returned to the federal court, but stood trial a second time and was found not guilty of the hate crime. (*Id.*)

3

complaint contained a cause of action against the "Syracuse Police Department," claiming that the defendant failed to conduct a thorough investigation into the "true facts" of this incident. (Compl. ¶¶ 43-54) (Dkt. No. 1). In the original complaint, plaintiff alleged that if the Syracuse Police Department had conducted a proper investigation, "the proper suspect would have been lawfully detained." (Compl. ¶ 53).

In my June 12th ORR, I found that departments that were merely administrative arms of a municipality did not have a legal identity separate and apart from the municipality and, therefore, could not be sued. (Dkt. No. 4 at 7-8) (citing inter alia *Burris v. Nassau County District Attorney*, No. 14-CV-5540, 2017 WL 9485714, at *4 (E.D.N.Y. Jan. 12, 2017)) (other citations omitted). I further found that plaintiff could not sue the "Syracuse Police Department." However, in an effort to liberally interpret the plaintiff's claims, I also considered his complaint as if he had named the City of Syracuse.

> To the extent that the complaint may be interpreted as a claim against the City of Syracuse, plaintiff has failed to state a claim.[] A municipality may only be named as a defendant in certain circumstances. In *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), the Supreme Court outlined the limited circumstances under which a municipality may be liable under Section 1983. A municipality may not be held liable solely because it employs a tortfeasor. *Los Angeles County, Cal. v. Humphries*, 562 U.S. 29, 36 (2010). Only when the municipality, through the execution of its policies, actually deprives an individual of his constitutional rights, is it liable for the injury. *Monell*, 436 U.S. at 694.
>
> To establish municipal liability, the policy must actually cause the violation of constitutional rights; it must be the moving force behind the violation. *Id.*; *Dominguez v. Beame*, 603 F.2d 337, 341 (2d Cir. 1979). Official policy includes the

> decisions of a government's lawmakers, the acts of policymaking officials, and practices that are so widespread as to "practically have the force of law." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Municipal liability may also be shown by establishing that a policymaking official ordered or ratified the employees' actions either expressly or tacitly.
>
> Finally, municipal liability can, under limited circumstances, be based upon a failure to properly train the municipality's employees. *Id.* However, municipal liability is most tenuous when a claim turns on the failure to train. *Id.* (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 822-23 (1985) (plurality opinion) ("[A] 'policy' of 'inadequate training'" is "far more nebulous, and a good deal further removed from the constitutional violation, than was the policy in *Monell* ")). To satisfy the statute, a municipality's failure to train its employees must amount to "'deliberate indifference to the rights of persons with whom the [untrained employees] come into contact.'" *Id.* (citation omitted).

(Dkt. No. 4 at 8-9) (footnote omitted). In his original complaint, plaintiff merely alleged that the police should have done a better job investigating his case, and if they had done so, the "'department' would have discovered various lies told by various individuals who wished to 'protect' the true perpetrator of the crime." (Dkt. No. 4 at 9). Even though the original complaint contained various criticisms of the investigation, I found that none of plaintiff's allegations reflected a failure to train or "deliberate indifference" to the rights of persons who would come into contact with the officers. (Dkt. No. 4 at 10). Thus, I found that plaintiff failed to state a claim for municipal liability, and to the extent that the complaint could have been read to allege a claim against the City of Syracuse, I recommended dismissal. (*Id.*)

However, I recommended that the dismissal be without prejudice to plaintiff

5

attempting to amend his complaint to allege municipal liability.[5] (Dkt. No. 4 at 13). Plaintiff's amended complaint has not cured the defects in the original so as to properly allege municipal liability. He has actually deleted any of the facts regarding the investigation and now is complaining about the appellate process, the retrial itself, and his request for "lesser included offenses." (AC ¶¶ 33-40). In his amended complaint, plaintiff has included facts about a sealed indictment and being denied an appearance before a Grand Jury. (AC ¶¶ 44-49). Plaintiff also criticizes another judge who presided over an "unrelated charge" and "issued a bail to punish the [plaintiff.]" (AC ¶ 50-51). None of plaintiff's new allegations state a claim for municipal liability against the City of Syracuse.

**WHEREFORE**, based on the findings above, it is

**RECOMMENDED**, that plaintiff's amended complaint (Dkt. No. 10) be **DISMISSED** in its entirety for failure to state a claim pursuant to 28 U.S.C. § 1915 (e)(2)(B)(ii).

Pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.1(c), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993)(citing *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed.

---

[5] I expressed doubt that plaintiff would be able to assert any facts in an amended complaint that would state a claim for municipal liability. (Dkt. No. 4 at 13 & n.8). However, in an abundance of caution and liberality, I recommended allowing plaintiff to try and amend his complaint.

R. Civ. P. 6(a), 6(e), 72.

Dated: September 1, 2020

_____
Andrew T. Baxter
U.S. Magistrate Judge